thank you your honor and I appreciate the courtesy relative to the pandemic my name is John Seidlitz I am honored to be before the court representing my client Dionne Nadon. Ms. Nadon applied for Social Security disability benefits and was denied those benefits and this appeal has followed. I would request two minutes of my time for rebuttal I am keeping track of my own time so I will try to end there. Ms. Nadon had applied for benefits back in April of 2015 she went through the normal process ultimately having an administrative hearing at after the administrative hearing the ALJ found the only severe impairment Ms. Nadon suffered was degenerative disc disease of the spine as the court is well aware of the steps in terms of the disability evaluation there's a five-step procedure first is whether there's SGA activity the second is there any severe impairments here not listed as severe were any of Ms. Nadon's mental limitations PTSD major depression anxiety none of those were incorporated they were not reviewed in step 3 the listed impairments and they were not submitted to the vocational consultant as part of the residual functional capacity under step 4 this is a critical error I believe it is a fatal error to the ALJ's decision because the evidence in front of the ALJ and this of her mental limitations including those alone in addition to her physical impairment it is dr. Newman in addition to the counselor Kimbrell Danielle Kimbrell provided counseling and both found almost identical medical findings mental findings as well as almost identical severities in terms of the level of anxiety I'll ask the government about this as well but there seemed to be confusion in this case about dr. Newman because it seems that the he didn't start treating your client until I think July 2016 but actually there are notes from May 2016 at er 579 and I don't really understand why those notes weren't discussed do you have an understanding of that but in terms of my brief at pages 16 and 17 excuse me 18 brief at 18 we discussed dr. Newman from the May 23rd 2016 initial examination the psychiatrist diagnosed PTSD major depression including fibromyalgia I am not certain why the defendant ignored the initial examination by dr. Newman and focused only on the July one which had almost identical finding I don't know if that was a function in part of the ALJ there were a number of errors with the ALJ including there was a PA Tracy Rogers who was hired by Social Security to do a disability exam and went through because as Nadine has ridiculous symptoms she's got numbness and pain down the whole right leg down into the calf and the ankle and and throughout the ALJ decision the references were to a oh I had a no here field I think but she does not ever discount PA Tracy Rogers who did this disability exam and again their defendant argues that footnote 16 6 that that should simply be viewed as a harmless air I think the medical evidence in the case precludes a finding that there's harmless air because the records are consistent with all of the health care providers including the nurse practitioner Michelle Smith that they all reference almost identical findings throughout the whole treatment and so in terms of justifying why we ignore dr. Newman in May and then later discount dr. Newman's findings by suggesting something something that might be new I don't know but defendant argues that the ALJ was properly ignoring the doctor when when he found it made on had normal attention focus and recall she presented to health care providers as pleasant cooperative alert and in no apparent distress that is the whole basis discount all of the mental health care providers is that she was pleasant cooperative alert at normal attention and focus there is no one in the medical reviews including the physicians that Social Security hires to do records reviews that indicate those findings allow a physician to rule out severe anxiety severe depression suicidal ideation but the ALJ has decided that those were the reasons to discount doctors and and the licensed clinical social worker and you know Kimbrough to to discount all of them because she discounted all of them virtually every one of them the courts aware and it's in the briefing in terms of the legal requirements are lessons and want when we're dealing with mental issues in terms of objective findings but here the doctor found a severe level of anxiety there was a Beck anxiety inventory of 27 by a dr. Mahoney who did a disability exam for Social Security he found a 27 indicating severe level of anxiety and so this is not a case where we do not have the types of objective findings for both the mental and the physical findings the MRIs they did a later one in 16 that backs up dr. PA Rogers in terms of the findings and the ridicular evidence and there's simply no contrary metal medical evidence other than we ignore the one position we don't even talk about him and then we say well you know she put on a cheery face to see the doctor so therefore she must not be having severe anxiety even though the doctor does not find that I think I think what we have is a situation where the ALJ made a decision and said there's no severe conditions and in order to justify it simply ignored all of the mental found none of the mental limitations were severe therefore didn't present them to the vocational consultant and as the court is is well aware that you have to include all of the severe impairments into the functional capacity if the vocational consultants testimony can be relied upon so here that she would be unable to work at least three days a month right that's exactly right that's exactly right and one of the other physicians or the licensed clinical social worker Oh also said there was an inability to sustain focus and neither of those were submitted or incorporated into the ALJ his opinion relied upon and in fact as noted in plaintiff's brief the ALJ found being off task that amount of time would preclude SGA so I mean a reversal for award is possible certainly a remand is to present this argument thank you you're welcome and we'll let you have two minutes on rebuttal thank you mr. Ellsbury morning your honors this is Thomas Ellsbury on behalf of the Commission of Social Security and if I may turn first to your honor judge Friedland your question about the dr. Newman page on page 6 of our brief we addressed that specific record and we said that made on followed up ostensibly followed up and and we said sensibly because there are no other records before the ALJ from dr. Newman Oh on on pages 6 8 17 18 of your brief you say we should discount dr. Newman because he says he was following up in July but there was no previous appointment to be following up on and there clearly is a previous appointment in May so I don't understand the premise of your brief on this I don't have the May appearance record is date May 23rd 2016 at the top of er 579 following I'm sorry I have to er 579 correct it's at the bottom of the page there's also a 547 to the right but that doesn't seem to be the numbering that's being used council go ahead and take your time five and respond fully an extra couple of minutes I see a page from dr. new dr. Newman on 579 with it seems like nothing but data in the top right if you look at it says seen by dr. Newman MD date May 23rd 2016 okay um but and we acknowledge that well I don't think so because repeatedly in your brief you say he he talks about a you know a follow-up but it can't be a follow-up because there was no visit before July this is a reference to a visit but there are no there I think if we didn't articulate it well my I apologize for that I think the records from a prior visit and and our primary discussion regarding you look at the next page there are quite a few records there are all kinds of notes about what happened in the visit on May 23rd er 580 okay so then I would I apparently I would I would concede that there is an error regarding to whether he first saw her in May 2016 or July 2016 but I look at the notes that he makes here and they're the same and consistent with what the ALJ had already relied on as far as the July 20th doesn't discuss mr. Newman could you point to where the ALJ explains why it is disregarding the treating physician dr. Newman I don't think you'll find it I think I think you're probably correct can you direct me where there is a substantive medical record by dr. Newman that is contrary to the LJ's assessment of the record well dr. Newman says that the client has depression I think there's a word like major depression and neither of those are really discussed and dr. Newman is a treating physician who is not discussed and I I don't understand how that's a thorough analysis of the medical record at that point can you cite to me the record that was before the ALJ where dr. Newman offered that I just showed you er 579 and 580 and 581 I see diagnoses but I see no discussion of functional limitation I see a diagnosis of fibromyalgia but I see no objective evidence to support that it's there is nothing underlying dr. Newman's very few pages here regarding this one day in May no other doctors within this record have assessed fibromyalgia right and the ALJ found that that was nothing and I would mention your honor this issue is not really before this court it was not appealed below the step two issue has not been briefed in this case nobody missed miss neon has not challenged the ALJ is finding at step two that are her impairment was limited to the degenerative disc disease I don't see a I've seen these things mentioned in the facts and in discussion by appellant but I see no legal argument challenging the ALJ's step to finding nor her assessment so if you look at page 2 ALJ Kelly failed to include PTSD and recurrent major depression anxiety I why is that not an argument I mean I think it's all over the brief isn't it um well I would one I would challenge that issues well where did the ALJ address depression and PTSD that page 125 depression and anxiety are addressed are mentioned as well as the the other impairments that the ALJ found non-severe and she continues on from page 125 but what is the basis for saying that that the mental impairments do not cause more than minimal limitation he cites all the exhibits and the basis for finding that are the opinions from dr. Mahoney dr. Bogomil dr. Renner dr. Yamamoto dr. Voorhees and mr. Rogers also said she was capable of work so and he cites those exhibits and I don't have the cross-reference from the exhibits to the exhibit from the administrative record exhibits and the excerpts of record here but I tracked them through on my notes and in each of those dr. dr. Yamamoto dr. Voorhees mr. Rogers all indicated to return the ability to work and I have that at the ALJ discussing that at 129 to 131 may I interject a question if in fact if in fact the ALJ made several mistakes which which you've acknowledged wouldn't it be a more fair procedure instead of affirming to vacate and remand so the ALJ can reassess the issues in light of all the evidence I would say that there is sufficient evidence here to support the ALJ's reasoning the error any error with the May 2016 report would be harmless because there is nothing of substance regarding the functional limitations if you were to credit about those documents those pages it's true it doesn't change the ales decision whatsoever or the substantial evidence so the appeals counsel rejected the later dr. Newman statement that did give more detail and said that she would miss work at least three times a week but the as I understand it the appeals counsel rejected that opinion on the basis that it did not relate to the period at issue which seems blatantly wrong because it says that it is about the period at issue so how do you reconcile that because there are several errors or defects with that evidence first off there is no evidence of a treatment relation that far back in fact as we've been talking here but that's a different issue I mean you could come up with a with a new argument about why they should have rejected it but all they said was it's the wrong dates which is wrong because he says it goes back into the period of issue well I I believe I can speak for the commissioner and state the reasons the evidence is not undermined because the appeals counsel's decision is not subject to review and since this is evidence that was not before the ALJ with the commissioners left with no option but for me to defend that that basis and what they found was there was no evidence of a treatment relationship that far back no evidence supporting the alleged frequent visits which in fact we said that where did where did the where did the appeals counsel say that there's no evidence of a treatment relationship that far back I think that's your argument not anything they ever said if I'm understanding correctly typically dr. Newman and okay I do see that here they did they do essentially just say it does not relate to the the period at issue and I believe it's our role to explain or to expand upon that on what they're saying based on our representation of our client and it's a very difficult position I understand because the court doesn't have the jurisdiction to review the reasoning of the ALJ's decision or the appeals counsel's decision but pursuant to Bruce and I believe it's Taylor once new evidence has been submitted after the decision to the appeals counsel then this court must review it to determine if it remains supported by substantial evidence the LJ's decision and our argument is these are reasons that the LJ's decision remains supported by substantial evidence because these are deficiencies in the evidence there's no progress notes there's no supporting evidence it the record before the LJ's establishes only back to May 2016 but he provides no basis for saying oh yeah sure I'll check this box saying it goes back to March 2015 and as Vincent is held post-decision retroactive or post-decision psychiatric opinions are quote inherently unreliable no I'm sorry notoriously unreliable so is that different than our opinion in Lester B chater which says you can diagnose something retroactively I'm confused about how it would necessarily be unreliable well I'm just saying the case in Vincent and what I'm saying is it's certainly so I don't have the facts of what was presented and what evidence the court was looking at in Lester but I do have the evidence in this case and in this case it fits more with Vincent because it does not it does not carry any of the characteristics that the LJ would be looking at in assessing the weight to assign to a medical opinion but I could I interject a question please yes okay my colleague is would be too humble as he is a humble person to cite a case that I found some question about your argument and I want to have you chat have a chance to respond judge Gould offered for our court in Dietrich versus Barry Hill important I think in something important in this case in that case the ALJ found that Dietrich was able to engage in a wide range of daily activity citing her activities to bathe cook shop and do chores and other tasks our judge Google highlighted in that that quote the ALJ ignored other evidence showing the difficulties Dietrich faced in everyday life close quote then citing gallant versus heckler where once more the same issue came up and ALJ and ALJ not just did not justify credibility finding by ignoring competent evidence in the record that suggests the opposite result would you please take that law which governs us in this case and apply it here it seems to me that there's a question of what the government did in this issue and being inconsistent with those cases certainly and I believe this is in regards to the ALJ the assessment of the credibility of the subjective complaints from the claimant and here there is no objective evidence that was ignored by the ALJ and what the ALJ what Ms. Nadine's allegations were is an inability to stand for more than five minutes at a time to walk more than a few feet great difficulties walking yet all the objective evidence shows full range of motion normal gait normal reflexes no indication of such a limitation that would demonstrate such extreme limitation and that's what the ALJ was using in comparing their activities of the shopping the seemingly normal activities of daily living but very inconsistent with the severity of the limitation claimed by the Ms. Nadine so I think I think it comports with Dietrich you do okay I and I understand eight activities of daily living is I would concede there are times when I am reviewing these these decisions in our assessment of defensibility and we see a activity daily living and it's like oh my gosh but I don't see that well this is not the strongest one I've ever seen I think it's strong enough because of the severity of the limitation alleged five minutes standing yet she goes for walks she goes shopping there's there's there's objective evidence contrary to depression and PTSD diagnoses yes they're inconsistent because as the LJ determined those were MS as several doctors behind those the limitations resulting from those non severe impairments were non-existent to mild and that has never been challenged here either and so in finding when she says that she can't go outside she just sits in the house all day and watches TV which incidentally is somewhat consistent with her sitting limitation of 20-30 minutes but the anxiety and depression she was saying she couldn't go out at all yet she said she would go to the store with another person or try to go and sit in the car and be anxious and have to calm herself down and if she went into the store then she thought everyone was watching her I mean she did go to the store but I think the description of how she did that is actually not inconsistent oh but the LJ relied on the inconsistent objective evidence the findings that she had no restrictions and activities daily living from dr. Svogomil and Renner who also opined she had no more than mild difficulty in social functioning and or in concentration or persistence if I may interject your six minutes over your time although we've been asking you a I certainly want you to answer fully all the questions from judge Wallace and judge Friedman well let me just let me just give one more that's going to bother me in 20 minutes that I haven't asked it ultimately the ALJ failed to address dr. Newman's medical opinion generally and specifically regard to the and I wonder whether that's legal error that requires us to send it back I would submit it is not the very least not harmful legal error or harmless because our requirements for establishing impairments in the severity of them require objective evidence underlying an acceptable medical source like dr. Newman we need the objective evidence underlying that I just a blanket diagnosis or a simple diagnosis or statement of impairment is insufficient to meet the the claimants burden to establish this impairment and it's insufficient to support the doc in this case dr. Newman's opinion because it's just an assertion there's no progress notes there's no underlying objective evidence that supports his diagnoses and in fact I've changed that page but often there is the history of diagnoses and they and it's listed what's there or has been there but we have no way to correlate our DLJ has no way to correlate it to this time period this error period being reviewed because we don't know where those came from because the ALJ are not the ALJ because dr. Newman provided no evidence underlying that diagnosis it's a mystery we have no idea what it is which is why the regulations require the for a doctor's to get it given great weight it's relevant to its arts dependent upon the amount of subjective evidence supporting this opinion and in this case we have no progress notes we have other than the May 2016 record I believe we have no other objective supporting evidence on July right pardon me May and July yeah in July and I will note that the ALJ found anxiety and right he found excuse me she found that all the evidence and he she lists as I have noted four to five doctors who all assess Ms. Nadine with very mild or minimal resulting limitations which undermines an assertion of such extreme limitation by the claimant so it goes both to what we were speaking about with mr. Newman and the diagnosis of I'm sorry dr. Newman with the diagnosis of PTSD or depression or anxiety but it also goes to the the ALJ's assessment of the payments credibility because she's alleging a lot of limitations based on mental impairment that the medical objective medical evidence and opinions all state they are mild to non-existent which is directly contrary to the the allegations of inability to go outside okay thank you okay thank you your yes I think I have a minute left here and I that should be more time than I need in terms of the the reference about objective medical evidence when we're dealing with the mental issues that's seldom available we do have a disability exam by dr. Mahoney who did a Beck anxiety inventory found a scale of 27 this is the disability exam not a treating finding racing heart trembling hands shaking that indigestion and so in terms of findings the doctors findings Newman's were consistent both with Mahoney as well as the clinical social worker who had 23 sessions with this woman so this is not a function of the there there is plenty of evidence in front of the ALJ and the court which confirms her mental limitation in terms of her own testimony in terms of her own testimony on daily living that was inconsistent according to defendants argument and the ALJ I have included that in my brief at 15 and 16 when she talks about what she does if she goes to the grocery store she has to sit in her car and do breathing exercises so she can go inside if she goes to Walmart I feel like I'm being judged I'm nervous it's better if I have somebody with me otherwise it's really hard for me to do anything by myself so this is not a function of a woman who has just a modest impact on her activities of daily living she's she needs someone to escort her to the grocery store this should have been included it should have been analyzed by the ALJ so that we don't have two layers of the court having to deal with these arguments if it had been analyzed and the ALJ had had put the relevant medical and exposed it and compared it as this court repeatedly said compare the medical that you think is inconsistent with the testimony so we can all figure out whether you properly reviewed this if that would have been done it would have saved a ton of time and a ton of paper I certainly appreciate the court listening thank you very much thank you counsel I want to again thank both both counsel for the appellant and appellee for their excellent arguments and the nade on case number 19 3 5 7 1 2 shall now be submitted and the parties will hear from us in due course thank you thank you
judges: Wallace, Gould, Friedland